FILED
2005 Aug-12  PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

-------------------------------------------------------------------------x

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                Plaintiff,

and

HENRY ADAMS, LETREK BEAVERS,
AVERY GARRETT, HOWARD GARRETT,
WILLIE GRIFFIN, CONRAD SCALES,
MICHAEL SMOOT, CLAY THOMAS,
LEON WALKER, JATHER WHETSTONE,
BOBBY WELCH, VINCENT YOUNG,

                Plaintiff-Intervenors,

      -v.-

TYSON FOODS, INC.,

                Defendant.

-------------------------------------------------------------------------x

Civil Action No.

JURY DEMAND

## COMPLAINT IN INTERVENTION

COMES NOW, Henry Adams, Letrek Beavers, Avery Garrett, Howard

Garrett, Willie Griffin, Conrad Scales, Michael Smoot, Clay Thomas, Leon

Walker, Jather Whetstone, Bobby Welch, and Vincent Young (collectively,

"Plaintiff-Intervenors") in this cause and, as their Complaint in Intervention against

Tyson Foods, Inc. ("Tyson" or "Defendant"), allege as follows, with knowledge

with respect to their own conduct, and on information and belief with respect to the acts of others:

1.      This Complaint in Intervention is an action for damages and injunctive relief based upon the laws of the United States, namely Title VII, 42 U.S.C. § 2000e, *et seq.*, of the Civil Rights Act of 1964, as amended ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), asserting unlawful racial discrimination, as well as the laws of the State of Alabama.

2.      Plaintiff-Intervenors intervene in this action pursuant to Federal Rule of Civil Procedure 24(a)(1) and Section 2000e-5(f)(1) of Title VII.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1981, 2000e (2005), *et seq.*  This Court also has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

4.      Plaintiff-Intervenors Henry Adams and Leon Walker have met all conditions precedent to filing this action under Title VII.  Plaintiff-Intervenors Henry Adams and Leon Walker timely filed their charges of racial discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") within 180 days of discriminatory treatment.  The allegations of the other Plaintiff-Intervenors are coextensive with those of Adams and Walker and are appropriately filed under the single filing rule.

2

5.     Venue is proper within this District pursuant to 28 U.S.C. § 1391(b).  At all relevant times, Plaintiff-Intervenors were employed by Defendant and worked at Defendant's chicken processing plant located in Ashland, Alabama (the "Plant").  The events described herein occurred within this District.

## **PARTIES**

6.     Each Plaintiff-Intervenor is African-American and resides in the State of Alabama.

7.     Defendant Tyson Foods, Inc. is a corporation existing under the laws of the State of Delaware, with its headquarters located in Springdale, Arkansas.

8.     At all relevant times, Defendant has been an employer within the meaning of Title VII.

9.     At all relevant times, Defendant has been a person or entity within the meaning of Section 1981.

10.     At all relevant times, Defendant has owned and operated the Plant, and has controlled its managers, supervisors, employees and agents who worked with or at the Plant.

## FACTUAL ALLEGATIONS

**Racially Segregated Facilities**

11.    Defendant intentionally and with malice or reckless disregard for Plaintiff-Intervenors' protected rights established and maintained racially segregated facilities in the "old shop" area of the Plant.

12.    Plaintiff-Intervenors often work in a building at the Plant known as the "old shop" (the "Old Shop"). The Old Shop has two bathrooms. Prior to the events described below, the bathrooms were unlocked and accessible to all employees.

13.    In 2003, Defendant renovated one of the bathrooms in the Old Shop (the "Bathroom"). In July 2003, employees or agents of Defendant locked the Bathroom door. Shortly thereafter, in addition to locking the Bathroom door, employees or agents of Defendant placed an "Out of Order" sign on the Bathroom door, although the Bathroom was not out of order.

14.    While the Bathroom door was locked and while the "Out of Order" sign hung from the Bathroom door, certain white employees, including at least one supervisor, had keys to the Bathroom door. These white employees used the Bathroom and allowed other white employees to use the Bathroom.

15.    The same white employees denied Plaintiff-Intervenors and other African-American employees, including supervisors, use of the Bathroom.

4

16.     Notwithstanding the locked door and the "Out of Order" sign, certain Plaintiff-Intervenors and other African-American employees continued to use the Bathroom by bypassing the lock. A white employee then purchased a hasp and padlock with Defendant's funds and installed the hasp and padlock on the Bathroom door with the permission of the head supervisor of the maintenance department and with the help of other white employees.

17.     The "Out of Order" sign remained on the Bathroom door after the hasp and padlock were installed.

18.     A Plaintiff complained about the installation of the hasp and padlock to a white supervisor.

19.     While the hasp, padlock and "Out of Order" sign were on the Bathroom door and in open view, the Plant manager conducted at least one inspection of the Old Shop, including the area where the Bathroom is located.

20.     Despite the complaint to the supervisor and the Plant manager's inspection of the Old Shop, the hasp, padlock and "Out of Order" sign remained on the Bathroom door. Moreover, certain white employees, including at least one supervisor, continued to maintain control over the keys to the Bathroom and continued to allow only white employees to use the Bathroom. In fact, the supervisor who received the complaint about the Bathroom used the Bathroom.

5

21.    Thereafter, in August 2003, employees or agents of Defendant placed a sign on the Bathroom door that read "Whites Only."

22.    The appearance of the "Whites Only" sign was immediately reported. In time, the "Whites Only" sign was removed, but the Bathroom remained locked and white supervisors and employees still denied Plaintiff-Intervenors and other African-American employees use of the Bathroom.

23.    Approximately a week later, employees or agents of Defendant placed a second "Whites Only" sign on the Bathroom door. The Bathroom remained locked with the padlock purchased with Defendant's funds and Plaintiff-Intervenors were still denied use of the Bathroom.

24.    On or about August 25, 2003, the Plant manager held a meeting with the maintenance department. During the meeting, the Plant manager did not mention the "Whites Only" sign or apologize for the locked Bathroom. Instead, the Plant manager pounded a table and angrily stated that the workers were "nasty," "dirty" and behaved like children, and stated that the Bathroom had been locked for those reasons. The Plant manager continued that if the Bathroom was not kept clean, it would be torn down and the workers would have to soil themselves.

25.    As punishment and retaliation for complaining about the "Whites Only" Bathroom, the Plant manager, during the August 25th meeting, announced

6

that the break room in the Old Shop where many African-American employees ate their lunch and took breaks would be eliminated, and that no employees would be allowed to take breaks in the Old Shop.

26.     After the meeting, Defendant eliminated the break room in the Old Shop. However, many of the same white employees who had keys to the Bathroom or used the Bathroom began to use another room in the Old Shop as their new break room. Initially, the door to the new break room was locked and only certain white employees had keys. Currently, the door is unlocked, but white employees exclusively have keys to and use a locked refrigerator and locked cabinets in the new break room.

27.     The head maintenance supervisor, who is white, has used the new break room. Moreover, the new break room has air conditioning, a computer, furniture built by white employees using Defendant's materials, and other amenities that were not in the original break room that had been used by Plaintiff-Intervenors and other African-American employees before it was eliminated by Defendant.

28.     As of the filing of this Complaint in Intervention, certain white employees continue to use the new break room despite the Plant manager's August 2003 directive that no employees would be allowed to take breaks in the Old Shop.

7

**Racist Language and Behavior**

29.    In addition to maintaining racially segregated facilities, Defendant intentionally and with malice or reckless disregard for Plaintiff-Intervenors' protected rights permitted the repeated use of racist language and behavior at the Plant.

30.    Over the past several years, on a regular basis, certain white supervisors and workers openly used racist and threatening language directed to or in the presence of Plaintiff-Intervenors. These supervisors and employees used the word "nigger," used threatening language such as "we're going to hang a black man today," and made racially hostile comments such as a comment about African-Americans and watermelons. This behavior was reported to a supervisor, and although Defendant was aware of the behavior, it continued.

31.    A picture of two monkeys with the names of two African-American employees written by the photos was placed on the locker of an African-American employee.

32.    A white employee led a Plaintiff to a room and showed the Plaintiff a noose.

33.    Over several years, certain white employees have repeatedly harassed and humiliated a Plaintiff by calling him "boy" and directing racist language and comments at him. This harassment often occurred in the presence of

8

supervisors as well as other Plaintiff-Intervenors and African-American employees.

### Retaliation and Threats

34.    Defendant unlawfully retaliated against certain Plaintiff-Intervenors for reporting the above-described segregated facilities and racist language and behavior.

35.    After the above-described events relating to the Bathroom and the August 25th meeting with the Plant manager, multiple Plaintiff-Intervenors met with union representatives in Birmingham, Alabama, to discuss the racial discrimination.  After the meeting, Defendant intentionally and maliciously terminated or suspended certain Plaintiff-Intervenors as retaliation for exploring racial discrimination charges.

36.    Approximately one year after the above-described events relating to the Bathroom and the August 25th meeting with the Plant manager, Defendant held "training" sessions for Plaintiff-Intervenors and other employees in the maintenance department at the Plant.  A Tyson employee from corporate headquarters conducting the "training" sessions stated, in substance, that racial discrimination lawsuits were the reason why Tyson shut down processing plants such as the Plant.  Subsequent to this "training" session, white employees

9

approached certain Plaintiff-Intervenors and discouraged them from pursuing any claims against Defendant.

**Injuries**

37.    As a direct consequence of Defendant's intentional and malicious conduct set forth in this Complaint in Intervention, Plaintiff-Intervenors have suffered lost wages, pain, humiliation, and severe and extreme emotional distress.

## COUNT I – TITLE VII

38.    Plaintiff-Intervenors re-allege the facts set forth in this Complaint in Intervention as ongoing and continuous violations of Title VII.

39.    At all relevant times, Plaintiff-Intervenors have been employees of Defendant, and Defendant has controlled the means and manner of Plaintiff-Intervenors' work.

40.    Defendant intentionally and with malice or reckless disregard for their protected rights subjected Plaintiff-Intervenors to a pervasive racially hostile work environment.

41.    Defendant intentionally and with malice or reckless disregard for their protected rights unlawfully retaliated against certain Plaintiff-Intervenors for complaining about the above-described pervasive racially hostile work environment by terminating or suspending them.

42.    Defendant was aware of and condoned or ratified this pervasive racially hostile work environment, and failed to take appropriate remedial action.

43.    Plaintiff-Intervenors seek compensatory and punitive damages as redress for the pervasive racially hostile work environment and retaliation.

## COUNT II – SECTION 1981

44.    Plaintiff-Intervenors re-allege the facts set forth in this Complaint in Intervention as ongoing and continuous violations of Section 1981.

45.    At all relevant times, Plaintiff-Intervenors have been employees of Defendant, and Defendant has controlled the means and manner of Plaintiff-Intervenors' work.

46.    Defendant intentionally and with malice or reckless disregard for their protected rights subjected Plaintiff-Intervenors to a pervasive racially hostile work environment.

47.    Defendant was aware of and condoned or ratified this pervasive racially hostile work environment, and failed to take appropriate remedial action.

48.    Defendant intentionally and with malice or reckless disregard for their protected rights unlawfully retaliated against certain Plaintiff-Intervenors for complaining about above-described pervasive racially hostile work environment by terminating or suspending them.

11

49.     This pervasive racially hostile work environment unreasonably interfered with Plaintiff-Intervenors' employment with Defendant, and denied Plaintiff-Intervenors the same right to make, enforce and enjoy the benefits of contracts as white persons.

50.     Plaintiff-Intervenors seek compensatory and punitive damages as redress for the pervasive racially hostile work environment and retaliation.

## COUNT III - OUTRAGE

51.     Plaintiff-Intervenors re-allege the facts set forth in this Complaint in Intervention as ongoing and continuous violations of Alabama law.

52.     At all relevant times, Plaintiff-Intervenors have been employees of Defendant, and Defendant has controlled the means and manner of Plaintiff-Intervenors' work.

53.     Defendant intentionally or recklessly, through the outrageous conduct of maintaining racially segregated facilities and allowing the persistent use of racially hostile language, inflicted and continues to inflict severe and extreme emotional distress upon Plaintiff-Intervenors that no reasonable person could be expected to endure.

54.     The outrageous conduct committed by Defendant's managers, supervisors, employees and agents was within the scope of their employment with Defendant, and was ratified by Defendant.

12

55.     Plaintiff-Intervenors seek compensatory and punitive damages as redress for the severe and extreme emotional distress caused by Defendant's outrageous conduct.

## COUNT IV – NEGLIGENT MANAGEMENT

56.     Plaintiff-Intervenors re-allege the facts set forth in this Complaint in Intervention as ongoing and continuous violations of Alabama law.

57.     Defendant was and continues to be negligent and reckless in hiring, training, supervising and retaining its managers, supervisors, employees and agents.

58.     Defendant's negligence and wanton recklessness caused and allowed its managers, supervisors, employees and agents to establish, maintain, condone and permit the pervasive racially hostile work environment set forth in this Complaint in Intervention.

59.     Defendant knew or reasonably should have known about the actions of its managers, supervisors, employees and agents prior to and during the establishment of the pervasive racially hostile work environment set forth in this Complaint in Intervention.

60.     Plaintiff-Intervenors seek compensatory and punitive damages as redress for the injuries caused by Defendant's negligence and wanton recklessness.

## RELIEF SOUGHT

WHEREFORE, Plaintiff-Intervenors respectfully pray for the following relief:

a.     Preliminary and permanent injunctions against Defendant and its directors, officers, employees, agents, and representatives from engaging in the unlawful practices and policies set forth herein.

b.     An order directing Defendant to establish practices and policies that will address, remedy, and prevent the unlawful practices and policies set forth herein.

c.     Compensatory and punitive damages for the lost wages, pain, extreme emotional distress, and humiliation suffered by Plaintiff-Intervenors.

d.     Reasonable attorneys' fees, expenses, and costs related to pursuing this action.

e.     Further legal and equitable relief, which is deemed appropriate and necessary.

## JURY TRIAL DEMAND

Plaintiff-Intervenors request a jury trial on all questions raised in this Complaint in Intervention.

14

Respectfully submitted,


_____
Kevin E. Clark


**LIGHTFOOT, FRANKLIN & WHITE, L.L.C.**
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone:  (205) 581-0700
Facsimile:  (205) 581-0799


_____
George N. Davies


**NAKAMURA, QUINN & WALLS LLP**
Lakeshore Park Plaza, Suite 130
2204 Lakeshore Drive
Birmingham, AL 35209
Telephone:  (205) 870-9989
Facsimile:  (205) 803-4143


Audrey Wiggins (*pro hac vice* application pending)
Nicole DeSario (*pro hac vice* application pending)
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Telephone:  (202) 662-8600
Facsimile:  (202) 783-0857

15

James P. Tallon (*pro hac vice* application pending)
James Kim (*pro hac vice* application pending)
**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179


Attorneys for Plaintiff-Intervenors

Dated:  August _11_, 2005